## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

_____

|  |  |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) **Civil Action No.:** |
| v. | ) |
| | ) **Description: Antitrust** |
| WASTE MANAGEMENT, INC. | ) |
| | ) **Date Stamp:** |
| and | ) |
| | ) |
| DEFFENBAUGH DISPOSAL, INC., | ) |
| | ) |
| Defendants. | ) |
| _____ | ) |

## COMPLAINT

The United States of America, acting under the direction of the Attorney General of the United States, brings this civil action to enjoin the proposed acquisition by Defendant Waste Management, Inc. ("WMI") of Defendant Deffenbaugh Disposal, Inc. ("DDI").  The United States alleges as follows:

### I.      INTRODUCTION

1.      Pursuant to the Agreement and Plan of Merger dated September 17, 2014, WMI proposes to acquire all of the outstanding securities of DDI.  WMI and DDI compete to provide small container commercial waste collection service in certain geographic areas in the United States.  They are two of only a few significant providers of small container commercial waste collection service in and around Springdale, Arkansas; Van Buren/Fort Smith, Arkansas; and Topeka, Kansas.

2.      WMI and DDI have competed aggressively against one another for customers in these three areas, which has resulted in lower prices for small container commercial waste collection service.  Unless the transaction is enjoined, consumers of small container commercial waste collection services in these areas likely will pay higher prices and receive lower quality service as a consequence of eliminating the vigorous competition between WMI and DDI. Accordingly, WMI's acquisition of DDI likely would substantially lessen competition in the provision of small container commercial waste collection service in and around Springdale, Arkansas, Van Buren/Fort Smith, Arkansas, and Topeka, Kansas, in violation of Section 7 of the Clayton Act, 15 U.S.C. § 18.

## II.      JURISDICTION, VENUE, AND INTERSTATE COMMERCE

3.      This action is filed by the United States under Section 15 of the Clayton Act, 15 U.S.C. § 25, as amended, to prevent and restrain the violation by Defendants of Section 7 of the Clayton Act, 15, U.S.C. § 18.

4.      The Court has subject matter jurisdiction over this action pursuant to Section 15 of the Clayton Act, 15 U.S.C. § 25, and 28 U.S.C. §§ 1331, 1337(a), and 1345.  In their small container commercial waste collection businesses, WMI and DDI makes sales and purchases in interstate commerce, ship waste in the flow of interstate commerce, and engage in activities substantially affecting interstate commerce.

5.      Defendant WMI transacts business in the District of Columbia, and WMI and DDI have consented to venue and personal jurisdiction in the District of Columbia.  Venue is therefore proper in this District under Section 12 of the Clayton Act, 15, U.S.C. § 22, and 28 U.S.C. § 1391(c).

### III.    THE DEFENDANTS AND THE TRANSACTION

6.      WMI is a Delaware corporation headquartered in Houston, Texas.  WMI is the largest waste hauling and disposal company in the United States providing collection, transfer, recycling, and disposal services throughout the nation.  For fiscal year 2014, WMI reported revenues of approximately $14 billion.

7.      DDI is a Delaware corporation headquartered in Kansas City, Kansas.  DDI provides waste collection, transfer, recycling and disposal services in Kansas, Missouri, Arkansas, Nebraska, and Iowa.  DDI's revenues for 2013 were approximately $180 million.

8.      On September 17, 2014, WMI and DDI entered into an Agreement and Plan of Merger by which WMI proposes to acquire all of the outstanding securities of DDI for approximately $405 million.

### IV.    TRADE AND COMMERCE

**A.    Relevant Service Market: Small Container Commercial Waste Collection**

9.      Waste collection firms, also referred to as "haulers," collect municipal solid waste ("MSW") from residential, commercial, and industrial establishments and transport the waste to a disposal site, such as a transfer station, landfill, or incinerator, for processing and disposal. Commercial customers typically contract directly with private waste collection firms, such as WMI and DDI, for the collection of MWS generated by their businesses.  MSW generated by residential customers, on the other hand, often is collected either by local governments or by private waste collection firms pursuant to contracts, or franchises granted by, municipal authorities.

10.     Small container commercial waste collection service is the business of collecting

3

MSW from commercial and industrial accounts, usually in dumpsters (*i.e.*, a small container with one to ten cubic yards of storage capacity), and transporting such waste to a disposal site by use of a front- or rear-end load truck.  Typical small container commercial waste collection customers include office and apartment buildings and retail establishments (*e.g.*, stores and restaurants).  Small container commercial waste collection does not include other types of waste collection services, such as residential collection service or the collection of roll-off containers.

11.     Small container commercial waste collection service differs in many important respects from residential waste collection or other types of collection services.  An individual commercial customer typically generates substantially more MSW than a residential customer. To handle this high volume of MSW efficiently, commercial customers are provided with small containers, also called dumpsters, for storing the waste.  Commercial accounts are organized into routes, and the MSW generated by these accounts is collected and transported in front-end load ("FEL") trucks uniquely well-suited for commercial waste collection.  Less frequently, haulers may use more maneuverable, but less efficient, rear-end load ("REL") trucks, especially in those areas in which a collection route includes narrow alleyways or streets which are difficult to navigate with FEL trucks.  Because FEL trucks are unable to navigate narrow passageways easily they cannot efficiently collect the waste located in them.

12.     On a typical small container commercial waste collection route, an operator drives a FEL truck to the customer's container, engages a mechanism that grasps and lifts the container over the front of the truck, and empties the container into the truck's storage section where the waste is compacted and stored.  The operator continues along the route, collecting MSW from each of the commercial accounts, until the vehicle is full.  The operator then drives the truck to a disposal facility, such as a transfer station, landfill or incinerator, and empties the content of the

truck.  Depending on the number of locations and the amount of waste collected on that route, the operator may make one or more trips to the disposal facility during the servicing of the route.

13.     In contrast to a small container commercial waste collection route, a residential waste collection route is significantly more labor-intensive.  The customer's MSW is stored in much smaller containers (*e.g.*, garbage bags or trash cans) and, instead of FEL trucks, waste collection firms routinely use REL trucks or side-load trucks manned by larger crews (usually, two- or three-person teams).  On residential routes, crews generally hand-load the customer's MSW, typically by tossing garbage bags and emptying trash cans into the vehicle's storage section.  Because of the differences in the collection processes, residential customers and commercial customers usually are organized into separate routes.

14.     Other types of collection activities, such as the use of roll-off containers (typically used for construction debris) and the collection of liquid or hazardous waste, also are rarely combined with small container commercial waste collection.  This is due to differences in the hauling equipment required, the volume of waste collected, health and safety concerns, government regulations, and the ultimate disposal option used.

15.     The differences in the types and volume of MSW collected and in the equipment used in collection services distinguish small container commercial waste collection from all other types of waste collection activities.  Absent competition from other small container commercial waste collection firms, a small container commercial waste collection service provider profitably could increase its charges without losing significant sales or revenues to firms engaged in the provision of other types of waste collection services.  Thus, small container commercial waste collection is a line of commerce, or relevant service, for purposes of analyzing the effects of the acquisition under Section 7 of the Clayton Act, 15 U.S.C. § 18.

**B.       Relevant Geographic Markets**

16.      Small container commercial waste collection service is generally provided in highly localized areas because a firm must have sufficient density (*i.e.*, a large number of commercial accounts that are reasonably close together) in its small container commercial waste collection operations to operate efficiently and profitably.  If a hauler has to drive significant distances between customers, it earns less money for the time the truck is operating.

17.      Accounts must also be near an operator's base of operations.  Firms with operations concentrated in a distant area cannot effectively compete against firms whose routes and customers are locally based.  It is economically impractical for a small container commercial waste collection firm to service areas from a distant base, which requires that the FEL truck travel long distances just to arrive at its route.  Local waste collection firms have significant cost advantages over other more-distant firms, and can profitably increase their charges to local customers without losing significant sales to firms outside the area.  Waste collection firms, therefore, generally operate from garages and related facilities within each of the local areas they serve.

18.      In each of the following areas a small container commercial waste collection firm could profitably increase prices to local customers without losing significant sales to more distant competitors: Springdale, Arkansas Area; Van Buren/Fort Smith, Arkansas Area; and Topeka, Kansas Area.  Accordingly, each of these areas is a section of the country, or relevant geographic market, for the purposes of analyzing the competitive effects of the acquisition under Section 7 of the Clayton Act, 15 U.S.C. § 18.

**C.      Anticompetitive Effects of the Proposed Acquisition**

19.     Defendants WMI and DDI directly compete in small container commercial waste collection service in each of the relevant geographic markets defined in paragraph 18.  The acquisition of DDI by WMI would remove a significant competitor in small container commercial waste collection in these already highly concentrated and difficult-to-enter markets.

20.     In the Springdale, Arkansas Area, the market for small container commercial waste collection services is highly concentrated and would become substantially more concentrated as a result of the proposed transaction.  By the parties own estimates, WMI has approximately 48% of the market and DDI has approximately 18% of the market.  The remaining 36% is split between only two other competitors.  Thus, in the Springdale, Arkansas Area, the proposed acquisition would reduce from four to three the number of competitors in the collection of small container commercial waste.

21.     In the Van Buren/Fort Smith, Arkansas Area, the market for small container commercial waste collection services is highly concentrated and would become substantially more concentrated as a result of the proposed transaction.  By the defendants' own estimates, WMI has approximately 33% of the market and DDI has approximately 33% of the market.  The remaining 34% belongs to a third competitor.  Thus, in the Van Buren/Fort Smith, Arkansas Area, the proposed acquisition would reduce from three to two the number of competitors in the collection of small container commercial waste.

22.     In addition, in both the Springdale, Arkansas Area and the Van Buren/Fort Smith, Arkansas Area, DDI is often the low-price leader, and customers in these areas frequently switch between the existing competitors in order to take advantage of lower prices.  In both of these

areas, WMI and DDI are also among the few small container commercial waste firms that can reliably service larger accounts.

23.     In the Topeka, Kansas Area, the market for small container commercial waste collection services is highly concentrated and would become substantially more concentrated as a result of the proposed transaction.  By the defendants' own estimates, WMI has approximately 35% of the market and DDI has approximately 32% of the market.  The remaining 33% belongs to a third competitor.  Thus, in the Topeka, Kansas Area, the proposed acquisition would reduce from three to two the number of competitors in the collection of small container commercial waste.  And for many of the larger small container commercial waste customers in the Topeka, Kansas Area, WMI and DDI are currently the only two options.  These customers would be left with only one option as a result of the acquisition.

24.     In each of these markets, the resulting significant increase in concentration, loss of competition, and absence of any reasonable prospect of significant new entry likely will result in higher prices and lower quality service for the collection of small container commercial waste.

**D.     Entry into Small Container Commercial Waste Collection**

25.     Significant new entry into small container commercial waste collection is difficult and time-consuming, including in the Springdale, Arkansas Area; the Van Buren/Fort Smith, Arkansas Area; and the Topeka, Kansas Area.

26.     In order to obtain a comparable operating efficiency, a new firm must achieve route densities similar to those of firms already competing in the market.  However, the incumbent's ability to engage in price discrimination and to enter into long-term contracts with collection customers is often effective in preventing new entrants from winning a large enough

base of customers to achieve efficient routes in sufficient time to constrain the post-acquisition firm from significantly raising prices.

27.     Incumbent firms also frequently use three- to five-year contracts, which may automatically renew or contain large liquidated damages provisions for contract termination. Such contracts make it more difficult for a customer to switch to a new firm in order to obtain lower prices for its collection service.

28.     By making it more difficult for new firms to obtain customers, these practices increase the cost and time required by an entrant to form an efficient route, reducing the likelihood that an entrant ultimately will be successful.

## V.     VIOLATIONS ALLEGED

29.     The proposed acquisition likely would lessen competition substantially for small container commercial waste collection services in the Springdale, Arkansas Area; the Van Buren/Fort Smith, Arkansas Area; and the Topeka, Kansas Area, in violation of Section 7 of the Clayton Act, 15 U.S.C. § 18.

30.     Unless enjoined, the proposed acquisition likely would have the following anticompetitive effects relating to small container commercial waste collection services in the Springdale, Arkansas Area; the Van Buren/Fort Smith, Arkansas Area; and the Topeka, Kansas Area, among others:

(a)     actual and potential competition between WMI and DDI would be eliminated;

(b)     competition generally would be substantially lessened; and

(c)     prices would increase and the quality of service would decrease.

## VI.    REQUESTED RELIEF

31.    Plaintiff requests that this Court:

(a)    adjudge and decree that WMI's acquisition of DDI would be unlawful and

violate Section 7 of the Clayton Act, 15 U.S.C. § 18;

(b)    permanently enjoin and restrain defendants and all persons acting on their

behalf from consummating the proposed acquisition of DDI by WMI, or from entering into or

carrying out any other contract, agreement, plan or understanding, the effect of which would be

to combine WMI with DDI;

(c)    award the United States the cost for this action; and

(d)    award the United States such other and further relief as the Court deems

just and proper.

FOR PLAINTIFF UNITED STATES OF AMERICA:

WILLIAM J. BAER (D.C. BAR #324723)
Assistant Attorney General for Antitrust

RENATA B. HESSE (D.C. BAR #466107)
Deputy Assistant Attorney General

PATRICIA A. BRINK
Director of Civil Enforcement

IAN D. HOFFMAN
DANIELLE G. HAUCK
ANURAG MAHESHWARY (D.C.
BAR #490535)

10

JAMES J. TIERNEY (D.C. Bar # 434610)
Chief
NETWORKS AND TECHNOLOGY SECTION


AARON D. HOAG
Assistant Chief
NETWORKS AND TECHNOLOGY SECTION

Dated: 3 / 13 / _____ , 2015

11