UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case# 1:15CV00366 |
| ) | |
| WASTE MANAGEMENT, INC. ) | Judge Amit P. Mehta |
| ) | |
| and ) | Date Stamp: |
| ) | |
| DEFFENBAUGH DISPOSAL, INC., ) | |
| ) | |
| Defendants. ) | |

## FINAL JUDGMENT

WHEREAS, Plaintiff, United States of America, filed its Complaint on March 13, 2015, the United States and defendants, Waste Management, Inc., and Deffenbaugh Disposal, Inc., by their respective attorneys, have consented to the entry of this Final Judgment without trial or adjudication of any issue of fact or law, and without this Final Judgment constituting any evidence against or admission by any party regarding any issue of fact or law;

AND WHEREAS, defendants agree to be bound by the provisions of this Final Judgment pending its approval by the Court;

AND WHEREAS, the essence of this Final Judgment is the prompt and certain divestiture of certain rights or assets by the defendants to assure that competition is not substantially lessened;

-2-

AND WHEREAS, the United States requires defendants to make certain divestitures for the purpose of remedying the loss of competition alleged in the Complaint;

AND WHEREAS, defendants have represented to the United States that the divestitures required below can and will be made and that defendants will later raise no claim of hardship or difficulty as grounds for asking the Court to modify any of the divestiture provisions contained below;

NOW THEREFORE, before any testimony is taken, without trial or adjudication of any issue of fact or law, and upon consent of the parties, it is ORDERED, ADJUDGED AND DECREED:

## I. Jurisdiction

This Court has jurisdiction over the subject matter of and each of the parties to this action. The Complaint states a claim upon which relief may be granted against defendants under Section 7 of the Clayton Act, as amended (15 U.S.C. § 18).

## II. Definitions

As used in this Final Judgment:

A.  "Acquirer" or "Acquirers" means the entity or entities to whom defendants divest the Divestiture Assets.

B.  "WMI" means defendant Waste Management, Inc., a Delaware corporation with its headquarters in Houston, Texas, its successors and assigns, and its subsidiaries, divisions, groups, affiliates, partnerships and joint ventures, and their directors, officers, managers, agents, and employees.

C. "DDI" means defendant Deffenbaugh Disposal, Inc., a Delaware corporation with its headquarters in Kansas City, Kansas, its successors and assigns, and its subsidiaries, divisions, groups, affiliates, partnerships and joint ventures, and their directors, officers, managers, agents, and employees.

D. "Disposal Agreement" means an agreement between WMI and the Acquirer(s) of the Springdale Arkansas Area Divestiture Assets allowing the Acquirer(s) to dispose of MSW at WMI's Eco Vista Landfill located at 2210 Waste Management Drive, Springdale, Arkansas.

E. "Divestiture Assets" means the small container commercial waste collection routes and other assets listed below:

1. Springdale, Arkansas Area

   a. DDI's small container commercial waste collection routes B501, B502, B503, B504, and B505;

   b. At the election of the Acquirer, a lease of up to 10 years (length at the election of the Acquirer) to either WMI's small container commercial waste facility located at 1041 Arbor Acres Rd., Springdale Arkansas 72762, or to DDI's small container commercial waste facility located at 848 Highway 264 E, Bethel Heights, Arkansas 72764; and

   c. At the election of the Acquirer(s), a Disposal Agreement.

2. Van Buren/Fort Smith, Arkansas Area

   a. DDI's small container commercial waste collection routes V501 and V502; and

-4-

    b.  At the election of the Acquirer, the assignment or sublease of DDI's current lease at the small container commercial waste facility located at 2598 S. 4th St., Van Buren, Arkansas 72956.

  3. Topeka, Kansas Area

    a.  DDI's small container commercial waste collection routes T501, T502, T503, and T504; and

    b.  At the election of the Acquirer, DDI's small container commercial waste facility located at 711 NE Highway 24, Topeka, Kansas 66608.

F. "MSW" means municipal solid waste, a term of art used to describe solid putrescible waste generated by households and commercial establishments. Municipal solid waste does not include special handling waste (*e.g.*, waste from manufacturing processes, regulated medical waste, sewage and sludge), hazardous waste, or waste generated by construction or demolition sites.

G. "Route" means a group of customers receiving regularly scheduled small container commercial waste collection service and all tangible and intangible assets relating to the route, as of January 28, 2015, (except for *de minimis* changes, such as customers lost and gained in the ordinary course of business), including, but not limited to, capital equipment, trucks and other vehicles (those assigned to routes and a pro-rata share of spare vehicles); containers (at the customer location and a pro-rata share of spares); supplies (pro-rata share); customer lists, records, and credit records; customer and other contracts; leasehold interests; permits/licenses (to the extent transferable), and accounts receivable. The customers for each route as of January 28, 2015, are on file with the Department of Justice, Antitrust Division.

H.     "Small container commercial waste collection" means the business of collecting MSW from commercial and industrial accounts, usually in metal bins (*i.e.*, a small container with one to ten cubic yards of storage capacity), and transporting or "hauling" such waste to a disposal site by use of a front- or rear-end loader truck.

### III. Applicability

A.     This Final Judgment applies to WMI and DDI, as defined above, and all other persons in active concert or participation with any of them who receive actual notice of this Final Judgment by personal service or otherwise.

B.     If, prior to complying with Sections IV and V of this Final Judgment, defendants sell or otherwise dispose of all or substantially all of their assets or of lesser business units that include the Divestiture Assets, they shall require the purchaser to be bound by the provisions of this Final Judgment. Defendants need not obtain such an agreement from the Acquirers of the assets divested pursuant to this Final Judgment.

### IV. Divestitures

A.     Defendants are ordered and directed, within 90 calendar days after the filing of the Complaint in this matter, or five (5) calendar days after notice of the entry of this Final Judgment by the Court, whichever is later, to divest the Divestiture Assets in a manner consistent with this Final Judgment to an Acquirer or Acquirers acceptable to the United States, in its sole discretion. The United States, in its sole discretion, may agree to one or more extensions of this time period not to exceed 60 calendar days in total, and shall notify the Court in such circumstances. Defendants agree to use their best efforts to divest the Divestiture Assets as expeditiously as possible.

B.	At the election of the Acquirer, WMI and the Acquirer of the Springdale, Arkansas, Area Divesture Assets shall enter into a Disposal Agreement allowing the Acquirer to dispose of MSW at WMI's Eco Vista Landfill located at 2210 Waste Management Drive, Springdale, Arkansas. The Disposal Agreement shall run for a period of no less than 3 years from the date of the divestiture, with the Acquirer of the Springdale, Arkansas, Divestiture Assets having the option of seven 1-year renewals, under terms that are reasonable and nondiscriminatory. The Disposal Agreement shall require that WMI provide access to the Acquirer to gates, side houses, and disposal areas under terms and conditions (except with respect to rates) that are no less favorable than provided to WMI's own vehicles. WMI shall perform all duties and comply with all the terms of the Disposal Agreement. Any amendments, modifications, extensions or early termination of any Disposal Agreement may only be entered into with the approval of the United States.

C.	In accomplishing the divestiture ordered by this Final Judgment, defendants promptly shall make known, by usual and customary means, the availability of the Divestiture Assets. Defendants shall inform any person making an inquiry regarding a possible purchase of the Divestiture Assets that they are being divested pursuant to this Final Judgment and provide that person with a copy of this Final Judgment. Defendants shall offer to furnish to all prospective Acquirers, subject to customary confidentiality assurances, all information and documents relating to the Divestiture Assets customarily provided in a due diligence process except such information or documents subject to the attorney-client privilege or work-product doctrine. Defendants shall make available such information to the United States at the same time that such information is made available to any other person.

D. Defendants shall provide the Acquirer(s) and the United States information relating to the personnel involved in the operation and management of the Divestiture Assets to enable the Acquirer(s) to make offers of employment. Defendants will not interfere with any negotiations by the Acquirer(s) to employ any defendant employee whose primary responsibility is the operation or management of the Divestiture Assets.

E. Defendants shall permit prospective Acquirers of the Divestiture Assets to have reasonable access to personnel and to make inspections of the physical facilities of the Divestiture Assets; access to any and all environmental, zoning, and other permit documents and information; and access to any and all financial, operational, or other documents and information customarily provided as part of a due diligence process.

F. Defendants shall warrant to the Acquirer(s) that each asset will be operational on the date of sale.

G. Defendants shall not take any action that will impede in any way the permitting, operation, or divestiture of the Divestiture Assets.

H. Defendants shall warrant to the Acquirer(s) that there are no material defects in the environmental, zoning or other permits pertaining to the operation of each asset, and that following the sale of the Divestiture Assets, defendants will not undertake, directly or indirectly, any challenges to the environmental, zoning, or other permits relating to the operation of the Divestiture Assets.

I. Unless the United States otherwise consents in writing, the divestiture pursuant to Section IV, or by Divestiture Trustee appointed pursuant to Section V, of this Final Judgment, shall include the entire Divestiture Assets, and shall be accomplished in such a way as to satisfy

the United States, in its sole discretion, that the Divestiture Assets can and will be used by the Acquirer(s) as part of a viable, ongoing small container commercial waste collection business in each of the geographic areas identified in Section II.E. Divestiture of the Divestiture Assets may be made to one or more Acquirers (except that the Divestiture Assets serving any single geographic area identified in Section II.E must be sold to the same Acquirer, and) provided that in each instance it is demonstrated to the sole satisfaction of the United States that the Divestiture Assets will remain viable and the divestiture of such assets will remedy the competitive harm alleged in the Complaint. The divestitures, whether pursuant to Section IV or Section V of this Final Judgment,

(1) shall be made to an Acquirer(s) that, in the United States' sole judgment, has the intent and capability (including the necessary managerial, operational, technical and financial capability) of competing effectively in the small container commercial waste business; and

(2) shall be accomplished so as to satisfy the United States, in its sole discretion, that none of the terms of any agreement between an Acquirer(s) and defendants give defendants the ability unreasonably to raise the Acquirer's costs, to lower the Acquirer's efficiency, or otherwise to interfere in the ability of the Acquirer(s) to compete effectively.

## V. Appointment of Divestiture Trustee

A. If defendants have not divested the Divestiture Assets within the time period specified in Section IV(A), defendants shall notify the United States of that fact in writing. Upon application of the United States, the Court shall appoint a Divestiture Trustee selected by the United States and approved by the Court to effect the divestiture of the Divestiture Assets.

B. After the appointment of a Divestiture Trustee becomes effective, only the Divestiture Trustee shall have the right to sell the Divestiture Assets. The Divestiture Trustee shall have the power and authority to accomplish the divestiture to an Acquirer(s) acceptable to

the United States at such price and on such terms as are then obtainable upon reasonable effort by the Divestiture Trustee, subject to the provisions of Sections IV, V, and VI of this Final Judgment, and shall have such other powers as this Court deems appropriate. Subject to Section V(D) of this Final Judgment, the Divestiture Trustee may hire at the cost and expense of defendants any investment bankers, attorneys, or other agents, who shall be solely accountable to the Divestiture Trustee, reasonably necessary in the Divestiture Trustee's judgment to assist in the divestiture. Any such investment bankers, attorneys, or other agents shall serve on such terms and conditions as the United States approves including confidentiality requirements and conflict of interest certifications.

C.    Defendants shall not object to a sale by the Divestiture Trustee on any ground other than the Divestiture Trustee's malfeasance. Any such objections by defendants must be conveyed in writing to the United States and the Divestiture Trustee within ten (10) calendar days after the Divestiture Trustee has provided the notice required under Section VI.

D.    The Divestiture Trustee shall serve at the cost and expense of defendants pursuant to a written agreement, on such terms and conditions as the United States approves including confidentiality requirements and conflict of interest certifications. The Divestiture Trustee shall account for all monies derived from the sale of the assets sold by the Divestiture Trustee and all costs and expenses so incurred. After approval by the Court of the Divestiture Trustee's accounting, including fees for its services yet unpaid and those of any professionals and agents retained by the Divestiture Trustee, all remaining money shall be paid to defendants and the trust shall then be terminated.  The compensation of the Divestiture Trustee and any professionals and agents retained by the Divestiture Trustee shall be reasonable in light of the value of the

Divestiture Assets and based on a fee arrangement providing the Divestiture Trustee with an incentive based on the price and terms of the divestiture and the speed with which it is accomplished, but timeliness is paramount. If the Divestiture Trustee and defendants are unable to reach agreement on the Divestiture Trustee's or any agents' or consultants' compensation or other terms and conditions of engagement within 14 calendar days of appointment of the Divestiture Trustee, the United States may, in its sole discretion, take appropriate action, including making a recommendation to the Court. The Divestiture Trustee shall, within three (3) business days of hiring any other professionals or agents, provide written notice of such hiring and the rate of compensation to [defendants] and the United States.

E.  Defendants shall use their best efforts to assist the Divestiture Trustee in accomplishing the required divestiture. The Divestiture Trustee and any consultants, accountants, attorneys, and other agents retained by the Divestiture Trustee shall have full and complete access to the personnel, books, records, and facilities of the business to be divested, and defendants shall develop financial and other information relevant to such business as the Divestiture Trustee may reasonably request, subject to reasonable protection for trade secret or other confidential research, development, or commercial information or any applicable privileges. Defendants shall take no action to interfere with or to impede the Divestiture Trustee's accomplishment of the divestiture.

F.  After its appointment, the Divestiture Trustee shall file monthly reports with the United States and, as appropriate, the Court setting forth the Divestiture Trustee's efforts to accomplish the divestiture ordered under this Final Judgment. To the extent such reports contain information that the Divestiture Trustee deems confidential, such reports shall not be filed in the

public docket of the Court. Such reports shall include the name, address, and telephone number of each person who, during the preceding month, made an offer to acquire, expressed an interest in acquiring, entered into negotiations to acquire, or was contacted or made an inquiry about acquiring, any interest in the Divestiture Assets, and shall describe in detail each contact with any such person. The Divestiture Trustee shall maintain full records of all efforts made to divest the Divestiture Assets.

      G.    If the Divestiture Trustee has not accomplished the divestiture ordered under this Final Judgment within six months after its appointment, the Divestiture Trustee shall promptly file with the Court a report setting forth (1) the Divestiture Trustee's efforts to accomplish the required divestiture, (2) the reasons, in the Divestiture Trustee's judgment, why the required divestiture has not been accomplished, and (3) the Divestiture Trustee's recommendations. To the extent such reports contains information that the Divestiture Trustee deems confidential, such reports shall not be filed in the public docket of the Court. The Divestiture Trustee shall at the same time furnish such report to the United States which shall have the right to make additional recommendations consistent with the purpose of the trust. The Court thereafter shall enter such orders as it shall deem appropriate to carry out the purpose of the Final Judgment, which may, if necessary, include extending the trust and the term of the Divestiture Trustee's appointment by a period requested by the United States.

      H.    If the United States determines that the Divestiture Trustee has ceased to act or failed to act diligently or in a reasonably cost-effective manner, it may recommend the Court appoint a substitute Divestiture Trustee.

## VI. Notice of Proposed Divestiture

A.	Within two (2) business days following execution of a definitive divestiture agreement, defendants or the Divestiture Trustee, whichever is then responsible for effecting the divestiture required herein, shall notify the United States of any proposed divestiture required by Section IV or V of this Final Judgment. If the Divestiture Trustee is responsible, it shall similarly notify defendants. The notice shall set forth the details of the proposed divestiture and list the name, address, and telephone number of each person not previously identified who offered or expressed an interest in or desire to acquire any ownership interest in the Divestiture Assets, together with full details of the same.

B.	Within fifteen (15) calendar days of receipt by the United States of such notice, the United States may request from defendants, the proposed Acquirer(s), any other third party, or the Divestiture Trustee, if applicable, additional information concerning the proposed divestiture, the proposed Acquirer(s), and any other potential Acquirer. Defendants and the Divestiture Trustee shall furnish any additional information requested within fifteen (15) calendar days of the receipt of the request, unless the parties shall otherwise agree.

C.	Within thirty (30) calendar days after receipt of the notice or within twenty (20) calendar days after the United States has been provided the additional information requested from defendants, the proposed Acquirer(s), any third party, and the Divestiture Trustee, whichever is later, the United States shall provide written notice to defendants and the Divestiture Trustee, if there is one, stating whether or not it objects to the proposed divestiture. If the United States provides written notice that it does not object, the divestiture may be consummated, subject only to defendants' limited right to object to the sale under Section V(C)

of this Final Judgment. Absent written notice that the United States does not object to the proposed Acquirer(s) or upon objection by the United States, a divestiture proposed under Section IV or Section V shall not be consummated. Upon objection by defendants under Section V(C), a divestiture proposed under Section V shall not be consummated unless approved by the Court.

## VII. Financing

Defendants shall not finance all or any part of any purchase made pursuant to Section IV or V of this Final Judgment.

## VIII. Hold Separate

Until the divestiture required by this Final Judgment has been accomplished, defendants shall take all steps necessary to comply with the Hold Separate Stipulation and Order entered by this Court. Defendants shall take no action that would jeopardize the divestiture ordered by this Court.

## IX. Affidavits

A.   Within twenty (20) calendar days of the filing of the Complaint in this matter, and every thirty (30) calendar days thereafter until the divestiture has been completed under Section IV or V, defendants shall deliver to the United States an affidavit as to the fact and manner of its compliance with Section IV or V of this Final Judgment. Each such affidavit shall include the name, address, and telephone number of each person who, during the preceding thirty (30) calendar days, made an offer to acquire, expressed an interest in acquiring, entered into negotiations to acquire, or was contacted or made an inquiry about acquiring, any interest in the Divestiture Assets, and shall describe in detail each contact with any such person during that

period. Each such affidavit shall also include a description of the efforts defendants have taken to solicit buyers for the Divestiture Assets, and to provide required information to prospective Acquirers, including the limitations, if any, on such information. Assuming the information set forth in the affidavit is true and complete, any objection by the United States to information provided by defendants, including limitation on information, shall be made within fourteen (14) calendar days of receipt of such affidavit.

B.  Within twenty (20) calendar days of the filing of the Complaint in this matter, defendants shall deliver to the United States an affidavit that describes in reasonable detail all actions defendants have taken and all steps defendants have implemented on an ongoing basis to comply with Section VIII of this Final Judgment. Defendants shall deliver to the United States an affidavit describing any changes to the efforts and actions outlined in defendants' earlier affidavits filed pursuant to this section within fifteen (15) calendar days after the change is implemented.

C.  Defendants shall keep all records of all efforts made to preserve and divest the Divestiture Assets until one year after such divestiture has been completed.

## X. Compliance Inspection

A.  For the purposes of determining or securing compliance with this Final Judgment, or of any related orders such as any Hold Separate Stipulation and Order, or of determining whether the Final Judgment should be modified or vacated, and subject to any legally recognized privilege, from time to time authorized representatives of the United States Department of Justice, including consultants and other persons retained by the United States, shall, upon written

request of an authorized representative of the Assistant Attorney General in charge of the Antitrust Division, and on reasonable notice to defendants, be permitted:

    (1) access during defendants' office hours to inspect and copy, or at the option of the United States, to require defendants to provide hard copy or electronic copies of, all books, ledgers, accounts, records, data, and documents in the possession, custody, or control of defendants, relating to any matters contained in this Final Judgment; and

    (2) to interview, either informally or on the record, defendants' officers, employees, or agents, who may have their individual counsel present, regarding such matters. The interviews shall be subject to the reasonable convenience of the interviewee and without restraint or interference by defendants.

B. Upon the written request of an authorized representative of the Assistant Attorney General in charge of the Antitrust Division, defendants shall submit written reports or response to written interrogatories, under oath if requested, relating to any of the matters contained in this Final Judgment as may be requested.

C. No information or documents obtained by the means provided in this section shall be divulged by the United States to any person other than an authorized representative of the executive branch of the United States, except in the course of legal proceedings to which the United States is a party (including grand jury proceedings), or for the purpose of securing compliance with this Final Judgment, or as otherwise required by law.

D. If at the time information or documents are furnished by defendants to the United States, defendants represent and identify in writing the material in any such information or documents to which a claim of protection may be asserted under Rule 26(c)(1)(g) of the Federal Rules of Civil Procedure, and defendants mark each pertinent page of such material, "Subject to claim of protection under Rule 26(c)(1)(g) of the Federal Rules of Civil Procedure," then the United States shall give defendants ten (10) calendar days notice prior to divulging such material in any legal proceeding (other than a grand jury proceeding).

## XI. No Reacquisition

Defendants may not reacquire any part of the Divestiture Assets during the term of this Final Judgment.

## XII. Retention of Jurisdiction

This Court retains jurisdiction to enable any party to this Final Judgment to apply to this Court at any time for further orders and directions as may be necessary or appropriate to carry out or construe this Final Judgment, to modify any of its provisions, to enforce compliance, and to punish violations of its provisions.

## XIII. Expiration of Final Judgment

Unless this Court grants an extension, this Final Judgment shall expire ten years from the date of its entry.

## XIV. Public Interest Determination

Entry of this Final Judgment is in the public interest. The parties have complied with the requirements of the Antitrust Procedures and Penalties Act, 15 U.S.C. § 16, including making copies available to the public of this Final Judgment, the Competitive Impact Statement, and any comments thereon and the United States' responses to comments. Based upon the record before the Court, which includes the Competitive Impact Statement and any comments and response to comments filed with the Court, entry of this Final Judgment is in the public interest.

Date: __7/8/15__

Court approval subject to procedures of Antitrust Procedures and Penalties Act, 15 U.S.C. § 16

_____
United States District Judge Amit P. Mehta